670 So.2d 761 (1996)
Marcus PITTMAN, III, M.D., et al., Plaintiffs-Appellants,
v.
Elton G. BEEBE, et al., Defendants-Appellees.
No. 95-1342.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1996.
Writ Denied May 10, 1996.
*762 James S. Holliday Jr., Baton Rouge, for Marcus Pittman, III, M.D., et al.
John A. Stassi II, Metairie, for Elton G. Beebe, et al.
Walter Brent Pearson, Alexandria, for Leonard H. Bossier, et al.
Before DOUCET, C.J. and YELVERTON and SAUNDERS, JJ.
YELVERTON, Judge.
This appeal arises from a judgment in a minority shareholders' suit maintaining exceptions of no cause of action filed by the defendants. For the following reasons we affirm.

FACTS
Dr. Marcus Pittman and Dr. Michael Pittman were minority shareholders in Forest Manor, Inc. (Old Forest Manor) a Louisiana business corporation which owned and operated a nursing home in Covington, Louisiana. On April 20, 1994, two offers were made to the shareholders of Old Forest Manor to purchase all of the operating assets of Old Forest Manor. Alexandria Investments, Inc. made an offer of 4.8 million dollars. The Pittmans were part of a group that made a counter-offer of 4.896 million dollars. The offer of Alexandria Investments was accepted. The Pittmans filed written notices dissenting from that acceptance.
The Pittmans were served with formal notice on June 2, 1994, that Old Forest Manor would be sold to Forest Manor, L.L.C. (New Forest Manor), the assignee of Alexandria Investments, for the sum of 4.8 million dollars. The Pittmans made written demand for the cash value of their shares in Old Forest Manor. They each owned 750 shares of the 6000 outstanding shares. They asserted that the fair cash value was $960 a share or $720,000 total to each of them. In accordance with the procedure required by La. R.S. 12:131 relating to dissenter's rights, they deposited their shares into an escrow account with Hibernia National Bank of Alexandria. The response to that demand was an offer of $360 a share for a total of $270,000 to each.
The Pittmans filed this suit seeking the fair cash value of their stock and damages due to a breach of fiduciary duty. They sued *763 W.R. Bryant, Marvin Bryant, H.H. Holloway, Debra Norman, Charles Holloway, and Stuart Johnson, the other shareholders who voted against selling Forest Manor to the Pittman Group. The Pittmans also named as defendants Elton Beebe, who owned part of Alexandria Investments, and Leonard Bossier, described in the petition as the "control person" of Alexandria Investments. The Pittmans alleged that Beebe and Bossier conspired to buy Old Forest Manor through Alexandria Investments to subsidize their joint venture seed business that had been losing money. In addition to these individual defendants, the suit named Old Forest Manor, Forest Manor, L.L.C., and Alexandria Investments, Inc.
All defendants filed an exception of no cause of action alleging that the plaintiffs' sole cause of action was for dissenter's rights against Old Forest Manor pursuant to La. R.S. 12:131. The trial court maintained the exception of no cause of action as to all defendants except Old Forest Manor, but it gave the plaintiffs time to amend their petition to state a cause of action if they could.
The Pittmans' amended their petition making specific allegations of damage pursuant to the business corporation law, La.R.S. 12:91, et seq. Again, all defendants filed exceptions of no cause of action. The trial court maintained all exceptions of no cause of action except the cause of action against Old Forest Manor for dissenter's rights pursuant to La.R.S. 12:131. The suit against the other defendants was dismissed. It is from this second judgment maintaining the exceptions of no cause of action that the Pittmans appealed.

THE ALLEGED CAUSES OF ACTION
The suit is one for harm the Pittmans claim that they suffered individually. They exercised their dissenter's rights pursuant to La.R.S. 12:131. The Pittmans additionally claim that they suffered personal injury and have a right to recover under the provisions of La.Civ.Code art. 2315 and La.R.S. 12:91.
In well-written reasons for judgment the trial court concluded that the Pittmans did not have a contract or a legally protected interest with Old Forest Manor to purchase its assets, and that, accordingly, there could not be a tortious interference with a contract, as explained by the supreme court in 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989). The trial court further concluded that the allegations of the Pittmans' petition failed to allege facts supporting a claim for direct damages. The trial court found that any damage suffered by the Pittmans as a result of the alleged action of the defendants was a reduction in the value of their stock. Citing Palowsky v. Premier Bancorp, Inc., 597 So.2d 543 (La.App. 1 Cir.1992), the trial court concluded that the decline in the value of a stock was an indirect damage and had to be asserted through a derivative action. The trial court therefore maintained defendants' exceptions of no cause of action as to all defendants except Old Forest Manor, as to which there remained a cause of action based on dissenter's rights.

EXCEPTION OF NO CAUSE OF ACTION
The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. The court reviews the petition and accepts well-pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Everything on Wheels v. Subaru South, 616 So.2d 1234 (La.1993).
Reviewing the Pittmans' petition and amended petition, it appears that they have alleged different causes of action against the defendants depending on the respective relationships between the individual defendants and Old Forest Manor. Therefore, we will address whether the Pittmans have alleged a cause of action against the particular defendants based on their relation to Old Forest Manor.
Action Against Bossier, Beebe, and Alexandria Investments
The Pittmans alleged that they were damaged by Bossier, Beebe, and Alexandria Investments *764 when these parties conspired and misrepresented to them their true intent in effectuating the purchase of the assets of Old Forest Manor. They claimed that Beebe created unfair competition by setting up a competing nursing home with an invalid certificate of need. They claimed that Beebe, Bossier, and Alexandria Investments wanted to purchase Old Forest Manor to mitigate losses from a joint venture seed business they owned, a purpose they failed to disclose. The Pittmans alleged that they relied on the misrepresentations made by Bossier, Beebe, and Alexandria Investments to their detriment.
The Pittmans argued that pursuant to Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007 (La.1993), they have alleged a cause of action against these defendants under La. Civ.Code art. 2315. In that case the supreme court found that V.P. Exterminators owed a duty to a third-party purchaser of a home to use reasonable care and competence in obtaining and ascertaining facts for a wood destroying insect report and in communicating facts or an opinion in the report even though no privity of contract existed between V.P. Exterminators and the purchasers.
A case-by-case employment of the duty/risk analysis is an appropriate standard for determining legal responsibility for negligent misrepresentations. Barrie, 625 So.2d 1007. It must first be determined whether plaintiff is a third party or a party to the contract or transaction. Id. There must be a legal duty on the part of the defendant to supply correct information, there must be a breach of that duty, and the breach must have caused plaintiff damage. Id. Whether a duty is owed is a question of law. Id.
Bossier, Beebe, and Alexandria Investments were dealing with the shareholders in the shareholders' capacities as the representatives of Old Forest Manor for the sale of the assets of Old Forest Manor. They were not dealing with the individual shareholders for the purchase of their individual shares of stock. Since the Pittmans were not parties to the negotiations between Bossier, Beebe, and Alexandria Investments with Old Forest Manor, they were third parties. Bossier, Beebe, and Alexandria Investments, in the present case, were not acting for the benefit of the Pittmans as V.P. Exterminators, Inc., was acting for the potential purchasers of the home in Barrie. In the present case there was no duty owed by Bossier, Beebe, or Alexandria Investments to the Pittmans as shareholders to disclose the reason for their purchase of the assets of Old Forest Manor. Therefore there is no liability under Article 2315.
Likewise, at the time of the alleged misrepresentations neither Bossier, Beebe, nor Alexandria Investments was either a shareholder, officer, or director of Old Forest Manor such that any one owed a fiduciary duty to the corporation or its shareholders pursuant to La.R.S. 12:91. As stated before, the Pittmans had no contract to purchase Old Forest Manor so they can not bring a tortious interference with a contract action against Bossier and Beebe.
We also find that under the facts in this case Bossier and Beebe owed no duty to the Pittmans and other individual shareholders of Old Forest Manor. Their alleged misrepresentations possibly could have damaged Old Forest Manor itself by devaluing the price of its stock. However, the means of asserting such a cause of action against Bossier, Beebe, and Alexandria Investments would have been a derivative action on behalf of Old Forest Manor, as will be further discussed below.
Action Against Other Shareholders
The Pittmans have not alleged a cause of action against the other shareholders who voted to sell the assets of Old Forest Manor to Alexandria Investments. We can find no allegation in the petition or amended petition that alleges any wrongdoing on the part of these defendants as shareholders. La.R.S. 12:93 concerning the liability of shareholders does not place a duty on shareholders under the facts of the present case.
Action Against Board of Directors
Three of the shareholders named in the suit as defendants became the new board of directors elected at the April 20, 1994 meeting: they were W.R. Bryant, Marvin Bryant, and H.H. Holloway. In their amended petition, the Pittmans alleged that this board of *765 directors refused the Pittman Group's second offer as the higher bid in violation of their fiduciary duty to minority shareholders.
Officers and directors of a corporation stand in a fiduciary relation to the corporation's shareholders as well as to the corporation itself. Palowsky, 597 So.2d 543. A shareholder of a corporation does not generally have a right to sue personally for the alleged losses sustained by a corporation due to mismanagement and/or breach of fiduciary duties. Id. Rather, a shareholder may only sue to recover losses to a corporation resulting from mismanagement and breaches of fiduciary duties secondarily through the shareholder's derivative suit. Id.
The directors' action in rejecting the higher bid allegedly damaged the Pittmans; if it damaged the Pittmans, it damaged the rest of the shareholders as well. As a result of accepting the lower bid, there was allegedly a decline in the value of the stock. As the first circuit stated in Palowsky, 597 So.2d at 545, "if a shareholder suffers only an indirect loss in the form of a decline in the value of his stock resulting from a loss sustained by the corporation due to mismanagement and/or breaches of fiduciary duty, that shareholder may only bring a derivative action on behalf of the corporation." Therefore, the Pittmans were limited to a derivative action against the directors for breach of fiduciary duty for this alleged damage. They did not assert a derivative claim but instead sued only for themselves.
Pursuant to La.R.S. 12:131(H), the shareholder, upon filing a demand for the value of his shares, shall cease to have any rights of a shareholder except the rights accorded by that section. Also, in the present case, Old Forest Manor had already sent notice of disagreement on the value of the shares, so the plaintiffs' demand could not have been withdrawn. As this court stated in Armand v. McCall, 570 So.2d 158, 160 (La.App. 3 Cir.1990), writ denied, 575 So.2d 375 (La.1991),
The filing of a demand by the petitioners for the value of their shares was tantamount to an acceptance of the merger. Once they had elected not to contest the merger but had chosen to pursue an increased valuation of the cash payment for shares, the petitioners ceased "to have any of the rights of a shareholder except the rights accorded by this section." [Referring to La.R.S. 12:131(H) ] These latter rights referred to, of course, are the rights to demand a greater value than that offered. Consequently, the right to pursue a derivative action is also forfeited. (Bracketed material ours)
Although that case dealt with a merger, as opposed to the sale of all the corporation's assets, the same reasoning applies in this case. Therefore, the Pittmans could not have asserted a derivative action on behalf of the shareholders even if they had wanted to.
Action Against Old Forest Manor
The Pittmans have not alleged any wrongdoing on the part of Old Forest Manor. Their only claim against this corporation was for the value of their stock. Their right of action for dissenter's rights pursuant to La. R.S. 12:131 was recognized by the trial court.
Action Pursuant to La.R.S. 51:712 and 714.
In brief the Pittmans also claim that the defendants are liable to them for unlawful practices pursuant to La.R.S. 51:712(A)(2) and (D) dealing with the sale of securities. These statutes do not apply in the present case. The "assets" of Old Forest Manor are what were sold, not the "stock." See La.R.S. 51:702(15)(a). The Pittmans did not sell their stock. If they had, they would not be able to assert a claim for dissenter's rights for the value of their stock.
For the above reasons, the judgment maintaining the exceptions of no cause of action is affirmed.
Costs of this appeal are assessed to Dr. Marcus Pittman and Dr. Michael Pittman.
AFFIRMED.
SAUNDERS, J., dissents.