706 So.2d 1015 (1998)
CHURCH POINT WHOLESALE BEVERAGE CO., INC., et al., Plaintiff-Appellants,
v.
William J. VOITIER, Defendant-Appellee.
No. 97-650.
Court of Appeal of Louisiana, Third Circuit.
January 14, 1998.
*1016 Joseph Lee Wimberley, Jr., Church Point, for Church Point Wholesale Beverage Co., Inc., et al.
William Winfield Stagg, Lafayette, for William J. Voitier.
Before DECUIR, PETERS and GREMILLION, JJ.
GREMILLION, Judge.
The plaintiffs, Church Point Wholesale Beverage Company, Inc. and Monroe Wholesale Beverage Company, Inc. (corporations),[1] filed a motion for declaratory judgment seeking to have employment contracts entered into between the defendant, William J. Voitier, and the previous board of directors of the corporations declared invalid and unenforceable. The trial court held that the contracts were valid and enforceable. The corporations appeal this decision. We affirm.

FACTS
Church Point Wholesale and Monroe Wholesale are both closely held family corporations, which were incorporated on May 29, 1961. They have identical corporate structures, articles of incorporation and by-laws, and were managed by the same person. The original board of directors for both corporations was composed of P. Roy Horecky, Anita Horecky Guidry, Genevieve Horecky Daigle, Paulina Arceneaux Harmon, and Louis B. Arceneaux. However, following incorporation, there were no indicia of incorporation. No annual shareholder meetings or board meetings were held, and no new directors were elected to succeed the original board of directors.
For some years prior to 1992, the general manager of the corporations was Bob Voitier, and his son, the defendant, was the assistant general manager. Bob Voitier died in March, 1992. Following his father's death, Voitier assumed the responsibilities of general manager. Shortly thereafter, he was approached by a shareholder, Charles Daigle, who stated that the shareholders were interested in involving themselves in the running of the corporations. Concerned that the shareholders were going to oust him as general manager, Voitier approached the two surviving directors, Arceneaux and Harmon, and suggested they reconstitute the board of directors by appointing persons *1017 to fill the three vacant director positions.[2] After consulting with their attorney, Hank S. Hannah, Arceneaux and Harmon called a special meeting of the board of directors on June 1, 1992, and elected Voitier, Julie D. Jacobs, and Donald Hebert to serve as directors. Voitier was also elected to serve as president of the corporations. A second special meeting was held on June 8, 1992, at which the directors voted to appoint Voitier general manager of the corporations and approved an employment contract for him. The contract provided for a term of two years with an automatic renewal of two additional successive two year terms in the absence of cause to terminate his employment. Voitier excused himself from discussion concerning the board's decision and abstained from voting on the contract. The terms of the contract were negotiated with Voitier by Hannah and Hebert, representing the corporations.
The first annual shareholders meeting was held on January 2, 1993. At that meeting the current directors were re-elected by a majority of the shareholders to continue on the board of directors. Prior to this meeting, pooling agreements were executed by Rose Marie Horecky Adams, Marvel McLeod, and Jacobs, at the request of Harmon. These pooling agreements gave Harmon the right to vote the shares at the annual meeting of the shareholders. The three shareholders subsequently claimed that they were unaware they were giving up their rights to vote their shares. When they attempted to vote their shares at the meeting, they were prevented from doing so. They alleged that Harmon told them that if management was replaced, the corporations would lose their franchise agreements. The vote of these pooled shares was necessary in order to obtain a majority of the votes to re-elect the current directors. The pooling agreements were canceled after the meeting.
The board of directors met on January 13, 1994, at which time they amended Voitier's prior employment contract, and extended the terms of the agreement to four additional successive two year terms, for a total of ten years. Once again, Voitier did not participate in any discussion or vote on the contract. Under both the original and amended contracts, Voitier received a salary of $30,000.00, plus a commission based on a graded scale of up to 20% of the corporations' year-end net profits.
At the annual shareholders' meeting, in March 1994, a new board of directors was elected by a majority of the shareholders. This board questioned the validity of the original and amended employment contracts. Following negotiations, the board of directors instituted this suit for declaratory judgment seeking to have the contracts declared invalid and unenforceable. In their petition, the corporations contended that the employment contracts "were executed without proper authorization of the corporation and/or in violation of the director's duty and obligation to exercise their fiduciary responsibility and obligation to the corporation and its shareholders." They further alleged that the contracts were unfair to the corporations under La. R.S. 12:84.
Following various pre-trial procedures, including the filing of several exceptions and motions by Voitier and the amendment of its petition by the corporations, a trial on the merits was held on November 20, 1996. The matter was submitted to the trial court through a joint statement of uncontested facts and evidence introduced into the record. On December 20, 1996, the trial court issued reasons for judgment finding that the employment contracts were valid and enforceable. The trial court awarded Voitier $2,500.00 in indemnification for expenses. A judgment was signed in this matter on January 23, 1997. After the trial court denied its motion for a new trial, the corporations suspensively appealed from this judgment.

ISSUES
On appeal, the corporations raise four issues for our consideration. First, they allege that the trial court erred in finding that the reconstitution of the board of directors in *1018 June, 1992 was proper. Second, the corporations claim the trial court erroneously found that Voitier did not breach his fiduciary duties to the corporations and their shareholders in his actions to obtain the original and amended employment contracts. Third, the corporations argue that the trial court erred in finding that the employment contracts were fair to both corporations. Finally, the corporations argue that the trial court erred in finding that the shareholders ratified the contracts and/or the actions of Voitier.

RECONSTITUTION OF THE BOARD OF DIRECTORS
In this assignment of error, the corporations allege that the trial court erred in finding the June 1992 appointments to the board of directors proper. It argues that under the articles and by-laws of both corporations, the board of directors only had the authority to fill vacancies during the calender year in which such vacancies occurred.[3] The by-laws provided for an annual shareholder meeting to occur on the second day of January. Since the vacancies at issue did not occur between January 1992 and January 1993, the corporations argue that Harmon and Arceneaux were proscribed from filling the three vacant seats in June 1992. The corporations further argue that pursuant to La.R.S. 12:81(B), the proper method for filling vacancies on the board of directors is through an election by the shareholders. Section B states:
Except as provided in subsection C(3) of this section, directors, other than the first directors named in the initial report filed with the articles, or in a supplemental report filed prior to issuance of any voting shares, shall be elected by the shareholders.
Section C provides:
The number, classification, qualifications, compensation, terms of office, manner of election, time and place of meeting, and powers and duties of the directors, may, subject to the provisions of this Chapter, be prescribed by the articles or by the bylaws. Except as otherwise prescribed in the articles or bylaws:
....
3) The remaining directors, even though not constituting a quorum, may, by a majority vote, fill any vacancy on the board (including any vacancy resulting from an increase in the authorized number of directors, or from failure of the shareholders to elect the full number of authorized directors) for an unexpired term, provided that the shareholders shall have the right, at any special meeting called for the purpose prior to such action by the board, to fill the vacancy.
The corporations claim that because the corporate by-laws limit the board of directors authority to filling vacancies during the year in which they occur, La.R.S. 12:81(C)(3) does not apply. Thus, the corporations claim that under La.R.S. 12:81(B), the shareholders are the proper body to fill the vacancies at issue.
In its written reasons, the trial court found that the reconstitution of the board at the June 1, 1992 meeting was "legally sufficient." It found that the corporations' interpretation of the by-laws would "stymie" the corporations and were "contrary to the letter and spirit of corporate law. Any other interpretation would paralyze corporate activity pending a stockholder's meeting. Corporations must have interim authority to act."
We perceive no error with this finding, and agree that the board had the authority to act as it did. This case is peculiar in that no corporate actions were taken for over thirty *1019 years after the inception of the corporations in 1961. When Voitier approached Arceneaux and Harmon, the two living directors, with the idea of reviving the board of directors, Arceneaux did not even remember that he was on the boards. However, prior to doing anything, he and Harmon sought legal advice from Hannah. Only after they were advised by him, did they call a special meeting of the board and make appointments to fill the three vacant positions.
If, as advocated by the corporations, the shareholders, alone, were authorized to fill the vacant positions on the board, the earliest they could have done so would have been January 2, 1993, since the by-laws provide that shareholders may only elect directors at the annual meeting. This would have delayed the board at a crucial time for the corporations from taking any corporate action for a further seven months. The Articles of Incorporation provide that subject to corporate law and the by-laws adopted by the board, "all corporate powers of this corporation shall be vested in and the business and affairs of this corporation shall be managed by a board of directors of not less than three (3) nor more than nine (9) natural persons." At least one vacancy on the board required filling before it could perform any corporate business. As it existed prior to June 1, 1992, the board, pursuant to the by-laws, could not have called a special meeting of the shareholders had it wanted to. The by-laws do provide that any shareholder holding 5% of the shares in the corporation could call a special meeting of the shareholders. However, no such action was taken. Thus, we find, as did the trial court, that the two surviving board members properly reconstituted the board of directors of the corporations at the June 2, 1992 special meeting. We find no error in the trial court's ruling, and that this assignment of error is without merit.

FIDUCIARY DUTY
In this assignment of error, the corporations claim that the trial court erred in finding that Voitier did not breach his fiduciary responsibilities by his actions in obtaining his original and amended employment contracts from the corporations' previous board of directors. Fiduciary is defined as "any person, firm, partnership, association or corporation, including a usufructuary, who or which occupies a position of peculiar confidence toward any person, firm, association, partnership, trust or estate." La.R.S. 12:1(J). La.R.S. 12:91 provides that:
Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions. Nothing herein contained shall derogate from any indemnification authorized by R.S. 12:83.
La.R.S. 12:84 provides in pertinent part:
A. No contract or transaction between a corporation and one or more of its directors or officers ... shall be void or voidable solely for this reason, or solely because the common or interested director or officer was present at or participated in the meeting of the board or committee thereof which authorized the contract or transaction, or solely because his or their votes were counted for such purpose; if:
1) The material facts as to his interest and as to the contract or transaction were disclosed or known to the board of directors or the committee, and the board or committee in good faith authorized the contract or transaction by a vote sufficient for such purpose without counting the vote of the interested director or directors; or
....
3) The contract or transaction was fair as to the corporation as of the time it was authorized, approved or ratified by the board of directors, committee, or shareholders.
Although a director is not barred from contracting with his corporation, his dealings with the corporation will be subjected to rigorous scrutiny. Levy v. Billeaud, 443 So.2d 539 (La.1983). An interested director bears the burden of proving his good faith in entering into the contract as well as the inherent fairness of the contract from the standpoint of the corporation. Woodstock *1020 Enterprises, Inc. v. International Moorings & Marine, Inc., 524 So.2d 1313 (La.App. 3 Cir.1988). This requires the director to prove that the contract was essentially an arm's length transaction. Noe v. Roussel, 310 So.2d 806 (La.1975).
This means that the agent or fiduciary must handle the matter as though it were his own affair. It also means the agent or fiduciary may not take even the slightest advantage, but must zealously, diligently and honestly guard and champion the rights of his principal against all other persons whomsoever, and is bound not to act in antagonism, opposition or conflict with the interest of the principal to even the slightest extent.
Id. at 819.
We agree with the trial court that Voitier did not breach the fiduciary duty he owed the corporation and its shareholders, and we adopt its well-written reasons on this issue:
Did defendant breach his fiduciary duty by securing said employment contracts from plaintiffs considering the series of events from March of 1992 to date? Defendant was certainly within his legal rights to seek and secure job security subsequent to his father's death in March of 1992. He had been with the company for approximately eighteen (18) years at that time, and had performed most every job available to the employees of the company. He had become assistant manager in 1982, thereby having served ten years in said capacity under the reign of his father at the time of his father's death in March of 1992. He was very familiar with the operation of the company. In fact, at that time (March of 1992), defendant was probably the person most familiar with the operation of the company. The company was indeed fortunate to have someone that capable at that point in time to continue the business. This is especially true when you consider that fact that the corporations (company) had not had a corporate meeting or elected officers or directors in thirty (30) years. And the corporation's manager for the last ten years had just passed away and the two remaining directors on the board knew little or nothing about the operation of the company. Defendant certainly did not breach any fiduciary duty when he approached the two remaining directors about filling the vacancies in the number of directors of said corporations. Such a move is appropriate corporate procedure. Defendant did not suggest that he be appointed to the board or elected as an officer. That decision was made by corporate counsel, Hank Hannah, who represented said remaining directors and was in no way connected to defendant. Nor did defendant breach any fiduciary duty when he asked for an employment contract. Corporate counsel approved of said contract and defendant did not participate in the voting on the matter. In fact, he excused himself entirely. Additionally a disinterested director, Mr. Hebert, was in favor of putting him on the board, making him an officer and giving him an employment contract, though it wasn't entirely what defendant wanted. Defendant was not legally bound nor did he have a duty to go to the shareholders regarding his proposed contract.
....
Though defendant had reason to believe that there were disgruntled shareholders opposed to his involvement in the corporations, he was within his legal rights to seek job security by way of an employment contract and also accept appointment on the board and serve as officer of the corporations. Defendant did not choose corporate counsel, nor did he coerce the remaining members of the board. He even excused himself from the corporate meeting when the board voted on matters concerning himself. He did not breach any fiduciary duty. The corporations were actually fortunate to have someone of his knowledge and experience with the company at that critical time for said corporations. No other officer or director in the company had his degree of knowledge, experience and skill. The evidence reveals that corporate counsel, Mr. Hannah, was instrumental in the decision making of the corporations regarding defendant. Perhaps the disgruntled shareholders should have addressed this matter to him at that *1021 time, or secure their own legal counsel to take action right then and there. That was not done. Mr. Hannah was not Mr. Voitier's attorney. Nor did the shareholders have their own attorney to represent and advise them as to their dissatisfaction with Mr. Voitier. In fact, the shareholders did nothing regarding this matter for well over a year, and not until March of 1994 did they call a meeting of the shareholders and remove those directors. They could have taken that action at any time after June 1, 1992, but chose not to. They cannot come into court at this time and try to rescind or invalidate legitimate corporate action regarding Mr. Voitier when they had ample opportunity to take action and forego the extension of defendant's contract which was done in January of 1994.
Regarding plaintiffs' claims under LSA-R.S. 12:84, there was full disclosure to the board about Mr. Voitier and his involvement with the corporations. The board also had the benefit of independent corporate counsel. Defendant did not vote on corporate matters concerning himself. He excused himself and abstained from the matter. Shareholder notice and consent was not legally necessary for the corporate action taken regarding defendant. The action taken by the board pertaining to Mr. Voitier was not unfair to plaintiffs. In fact, the evidence supports the premise that it was in the best interest of the corporations to give Mr. Voitier an employment contract in order to secure for the company someone with knowledge, experience and skill in the business at a critical time for the corporation and to establish a necessary degree of continuity in corporate action. As Mr. Hebert stated in his deposition, Mr. Voitier was a good businessman and the corporations got two for the price of one. They secured the services of the defendant as manager at a comparable cost as before and were able to eliminate defendant's prior position as assistant manager. Defendant was not in bad faith in this matter. He did not coerce the remaining board members who had the benefit of independent corporate counsel. He did not vote on his own contracthe abstained and excused himself. Of course, defendant sought job security for himself and the most lucrative contract he could get. From a business standpoint, any person in that position would have logically done the same thing. There was no violation of LSA-R.S. 12:84 by defendant in his dealings with plaintiffs. He certainly met his burden of proving good faith and fairness in his dealings with plaintiffs. Spruiell v. Ludwig, 568 So.2d 133 (La.App. 4th Cir.1990); Woodstock Ent. [Inc.] v. International Moorings [ & Marines, Inc.], 524 So.2d 1313 [La.App. 3 Cir.1988) ].
In their brief, the corporations repeatedly claim that Voitier "subverted" the intent of the shareholders to change management through his actions in seeking to have the board reconstituted and obtaining the employment contracts. The corporations allege that Voitier, following his meeting with Daigle and without notice to the shareholders, acted to reconstitute the board of directors in order to subvert the intent of the shareholders to change management. However, the evidence shows that Voitier merely approached Arceneaux and Harmon, the two remaining directors, and asked them to reactivate the board of directors. This was exactly what Daigle inferred the shareholders wanted.
In arguing that Voitier acted to prevent the shareholders from replacing management, the corporations use the term "shareholders" as though the shareholders were acting as one unit. However, there is no evidence that all of the shareholders desired to change management. Arceneaux, Harmon, and Jean Voitier, Voitier's mother, each owned 10% of the shares in the corporations. One can conclude that they did not intend to remove Voitier from his management position. Also, the corporations' claim that the uncontested evidence show that Voitier knew for a fact that the shareholders intended to replace management is not supported by the evidence. We note that the record reflects that Voitier was concerned about the intention of some of the shareholders, but there is a vast difference between being concerned and knowing for certain.
*1022 For the foregoing reasons, and the reasons assigned by the trial court, we find that Voitier did not breach the fiduciary duty he owed the corporations and their shareholders by obtaining the employment contracts at issue. We also find that he complied with La.R.S. 12:84 in obtaining the contracts. This assignment of error is, likewise, without merit and is dismissed.

FAIRNESS TO THE CORPORATIONS
The corporations argue in this assignment of error that the trial court erred in finding that the employment contracts entered into were fair to both corporations. Conversely, the corporations claim that the contracts are unfair because neither corporation can be sold as a separate entity while Voitier manages both, and because it is impossible for Voitier to "fulfill his obligations under each contract to devote his full time exclusive duties to the management of each business."
Once again, we adopt the trial court's reasons on this issue:
Finally, plaintiffs allege that defendant's contracts contain provisions for full time exclusive employment which were impossible to fulfil (sic). Defendant's contracts, for all practical purposes, call for defendant to perform the same duties and satisfy the same obligations as his predecessor. Both corporations have been managed by the same manager since their inception. Mr. Horecky managed both corporations. Mr. Robert Voitier managed both corporations up until his death in March of 1992. And defendant has managed both corporations since March of 1992. It was well known and understood that defendant, according to his contracts, would manage both corporations. Both corporations have the same officers, directors, stockholders, corporate charter, by-laws and minutes. Only their names and territories are different. The manner in which these identical corporations were set up indicated, from a logical interpretation, that they were to be managed by one individual. This type of joint management had been approved and ratified by both corporations for years. This was the intent of the parties. Plaintiffs' allegations that certain contractual provisions contain provisions which were impossible to fulfill are unsubstantiated and without merit. Defendant has been effectively managing both corporations for over four years with the knowledge of the governing authority of both corporations.
Considering the evidence presented in this case, this court is of the opinion that defendant's original and amended employment contracts with plaintiffs are valid and enforceable.
We also agree that these employment contracts are not a deterrent to either of the corporations' sale. If one corporation was sold, then the purchaser would have the choice of retaining Voitier as general manager or buying out his contract. This occurs often in the business world when corporations are bought out or merged, and it would not be an obstacle to the sale of a corporation if the purchaser was really interested in obtaining it. We, therefore, find that this assignment of error is without merit and dismiss it.

RATIFICATION
In their final assignment of error, the corporations argue that the trial court erred in finding that the shareholders ratified the contracts and/or the actions of Voitier. The corporations base their argument on the grounds that Voitier did not inform any of the shareholders of the original employment contract at the January 2, 1993 shareholder meeting, the pooling agreements executed prior to that meeting which allowed the board of directors to be re-elected, and the January 13, 1994 extension of his employment contract. The corporations claim that because the shareholders were not aware of all of the material facts, their inaction and the board's actions cannot be viewed as a ratification of Voitier's breach of his fiduciary duty.
We have already held that Voitier did not breach his fiduciary duty to the corporations and the shareholders. Further, we also agree with the trial court that:
In this case, the law and corporate by-laws allow the remaining directors to fill vacancies pending a shareholders' meeting. *1023 The board of directors elects its corporate officers. Neither notice to shareholders nor shareholder approval is necessary to exercise these particular corporate functions. Further, the granting of an employment contract, vel non, is within the authority of the board. Shareholder notice or approval is not necessary for that type of corporate activity either. It is not one of those type of corporate activity that require shareholder approval.
Thus, we find that Voitier was not required to inform the shareholders of either his original or the extended employment contract. The negotiation and execution of these contracts was a corporate function of the board of directors, which information was not required to be disseminated to the shareholders for their approval.
With regard to the pooling agreement, there is no evidence that Voitier was the source of these agreements. Arceneaux testified that she thought Hannah suggested drafting it, and Hebert and Harmon testified that Hannah prepared the agreement. Harmon further testified that the reason she gave Adams, McLeod, and Jacobs for requesting their signature to the agreement was that it would enable the business to continue being run as it had in the past. Arceneaux stated that one of the reasons the pooling agreement was confected was because they felt Voitier was doing well and they did not want someone inexperienced running the business. At the January 2, 1993 shareholder meeting, Hebert testified that there was confusion about the agreement in that some people did not have a basic understanding as to what it represented. Shortly after the shareholder meeting, another meeting was held and the pooling agreements were canceled. Although the Joint Statement of Uncontested Facts state that Adams and McLeod would testify that Harmon represented to them that the corporations would lose their franchise agreement if management was replaced, we find no evidence in the record that Voitier was responsible for these agreements.
Finally, we find that the shareholders, through their inaction, ratified the actions of the board of directors in extending the employment contracts to Voitier. The corporate by-laws provide that the corporate powers of the corporations are vested in, and the business and affairs of the corporations shall be managed by the board of directors. Thus, the board of directors was the proper corporate entity to negotiate the employment contracts with Voitier. The board was not required to seek ratification or prior authority from the shareholders before executing the contracts. However, the shareholders did have the authority to call a special shareholder meeting and elect new directors if they were unhappy with the actions of the present board. This they did not do. Arceneaux testified that, after he and Harmon made the initial appointments to the board of directors, no shareholder complained to him or requested that he call a special meeting of the shareholders in order to appoint new directors.
Hebert testified that following the board's re-election in January 1993, no shareholder petitioned or requested the board to call a special shareholder meeting to hold new elections. Nor did any shareholder call for a special meeting after the pooling agreements were revoked. Hebert stated that a meeting of the shareholders was held in Church Point in March 1993. At that meeting, Hebert stated that Daigle was the most outspoken of the group and that he did not appear to hold Voitier or his father in high esteem. Hebert felt that if Daigle and his followers wanted to change the board they could have called a special meeting of the shareholders to hold new elections. He recalled that several shareholders mentioned they had or were going to contact their attorneys. However, Hebert testified that he was never contacted by any shareholder at any time during his tenure on the board.
Hebert further stated that he was positive the shareholders were informed about the employment contracts because Jacobs, who was Daigle's sister, brought up the contract at more than one board meeting and told them that she had given a copy of the contract to Daigle. He also testified that the board knew that Jacobs was upset that her son was not hired by Voitier as his assistant manager. Hebert stated that Voitier *1024 brought the matter to the board's attention, and it agreed that Jacob's son should not be hired due to his lack of experience in the beer business.
Although the shareholders were not required to ratify the board's actions in offering Voitier the employment contracts, they did have the ability to call a special shareholder meeting and request new elections for the board of directors. The shareholders did neither. Thus, we find that they cannot now complain that the employment contracts were invalid and unenforceable. We find no merit in this assignment of error.

CONCLUSION
For the foregoing reasons, the judgment of the trial court finding the employment contracts valid and enforceable is affirmed. The costs of this matter are assessed to the plaintiffs-appellants, Church Point Wholesale Beverage Company, Inc. and Monroe Wholesale Beverage Company, Inc.
AFFIRMED.
PETERS, J., dissents and assigns reasons.
PETERS, Judge, dissenting.
I respectfully disagree with the majority opinion in this matter. As pointed out by the majority, Voitier approached Arceneaux and Harmon because Daigle expressed an interest in involving the shareholders in the corporations' operation, and Voitier interpreted that interest as a threat to his general manager position. In calling the special meeting to fill the vacancies, Voitier intentionally did not notify the shareholders to protect his own self-interests. It was only after he was safely entrenched with long-term employment contracts that a shareholders meeting was allowed to be held. Even then, pooling agreements were used to circumvent the participation of the shareholders in the meeting. Almost immediately thereafter, Voitier again feathered his own nest at the expense of the shareholders by increasing the terms of his contracts and solidifying his position with what appears to be a handpicked board of directors. The degree of confidence Voitier held with the shareholders was clearly exhibited at the very next shareholders meeting when a new board of directors was elected.
As pointed out in a footnote in the majority opinion, the corporations' bylaws provide that directors are to be elected at the annual meeting of the stockholders "for a term of one year and until their successors are elected and qualified, except as hereinafter otherwise provided for filling vacancies." The bylaws "otherwise" provide that a vacancy in the board of directors "occurring during the year, shall be filled for the unexpired term by a majority vote of the remaining directors...." (Emphasis added). All of the vacancies filled at the June 8, 1992 meeting were vacancies that had occurred before 1992. The fact that the corporations had functioned on paper only made it all the more important that the shareholders be aware of such developments.
In reaching its decision, the majority looses sight of the fact that the shareholders, and not the officers and directors, own the corporations. The directors are merely the managers of the corporations. La.R.S. 12:81(A). Additionally, the officers, although appointed by the directors, are limited to the performance of duties "as may be prescribed in the by-laws or by the board." La.R.S. 12:82(D). Both have statutory fiduciary obligations to a corporation and its shareholders. La.R.S. 12:91 provides in part:
Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions.
(Emphasis added).
Thus, it is clear that the fiduciary relationship is to the shareholders as well as to the corporations. Pittman v. Beebe, 95-1342 (La.App. 3 Cir. 3/6/96), 670 So.2d 761, writ denied, 96-0882 (La.5/10/96), 672 So.2d 931. As fiduciaries, corporate officers and directors are obligated to disclose facts within their knowledge to shareholders and to deal with them in an atmosphere of trust and confidence. Junker v. Crory, 650 F.2d 1349 (5th Cir.1981). Voitier took information he *1025 received from his conversation with Daigle and used it to his advantage without regard to the corporations' interest. In my opinion, his actions violated his fiduciary obligation to the corporations' ownersthe stockholders.
I would reverse the trial court's judgment and award the corporations the relief they seek.
NOTES
[1] Since both corporations, their boards of directors, and their actions taken are identical for both corporations, we will address them as a single unit.
[2] The other three directors had died during the previous thirty years and no one was appointed or elected to replace them.
[3] Article II of the by-laws of both corporations provides:

1) The directors of this corporation shall be elected at the annual meeting of the stockholders for a term of one year and until their successors are elected and qualified, except as hereinafter otherwise provided for filling vacancies. The directors shall be chosen by pluralities of the votes of the stockholders voting either in person or by proxies at such annual meeting.
2) Vacancies in the board of Directors, occurring during the year, shall be filled for the unexpired term by a majority vote of the remaining directors at any special meeting called for that purpose, or at any regular meeting of the Board.