Linda PARNES, Plaintiff
Below, Appellant,

v.

BALLY ENTERTAINMENT CORPORA-
TION, Hilton Hotels Corporation, Ar-
thur M. Goldberg, Barrie K. Brunet, J.
Kenneth Looloian, James F. Rochford,
George N. Aronoff, Patrick L. O'Malley,
Rocco J. Marano and Edwin M. Halk-
yard, Defendants Below, Appellees.

No. 85, 1998.

Supreme Court of Delaware.

Submitted: Oct. 20, 1998.
Decided: Jan. 25, 1999.

Robert D. Goldberg of Biggs and Battaglia, Wilmington, Delaware; J.F. Harnes (argued) and J.T. Harnes of Silverman, Harnes, Harnes, Prussin & Keller, New York City, for appellant.

Jesse A. Finkelstein and Raymond J. DiCamillo of Richards, Layton & Finger, Wilmington, Delaware, and Hugh Steven Wilson of Latham & Watkins, San Diego, California, and Everett C. Johnson, Jr. of Latham & Watkins, Washington, DC, for Defendant Hilton Hotels Corporation; Stephen E. Jenkins and Richard D. Heins of Ashby & Geddes, Wilmington, Delaware, and Dennis J. Block (argued) of Cadwalader, Wickersham & Taft, New York City, and Stephen A. Radin of Weil, Gotshal & Manges, LLP, New York City, for Defendants Arthur M. Goldberg, Barrie K. Brunet, J. Kenneth Looloian, James M. Rochford, George N. Aronoff, Patrick L. O'Malley, Rocco J. Marano and Edwin M. Halkyard.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ, constituting the Court en Banc.

BERGER, Justice:

██ This is an appeal from a decision dismissing a purported class action challenging the 1996 merger between Bally Entertainment Corporation and Hilton Hotels Corporation. The Court of Chancery decided that the complaint stated only a derivative claim—waste of corporate assets—and that appellant, a former Bally stockholder, lost standing to assert that claim after the merger was accomplished. We read the complaint differently and hold that it adequately alleges a direct, or individual, claim attacking the fairness of the merger. As a result, the merger did not deprive appellant of standing to pursue her claim.

## I. Factual and Procedural Background

On June 6, 1996, Bally and Hilton entered into a stock-for-stock merger agreement pursuant to which Bally was to be merged with and into Hilton. On August 29, 1996, Linda Parnes, who was then a stockholder of Bally, filed this action against Bally, all of its directors, and Hilton. The complaint alleges that Bally's directors breached their fiduciary duties by entering into a merger agreement that was the product of unfair dealing and provided Bally's stockholders an unfair price. The complaint prays for a temporary and permanent injunction, among other forms of relief, but Parnes never sought judicial intervention to stop the merger.

Bally and its directors responded to the complaint by filing a motion to dismiss. Briefing on that motion was completed on December 18, 1996, the same day that the merger was completed. In May 1997, the Court of Chancery granted, in part, and denied, in part, the motion to dismiss.[1] The trial court held that the allegations attacking the merger failed to state a claim, but that the allegations detailing the payments and other benefits that Bally's Chairman and Chief Executive Officer would receive as a result of the merger stated a waste of corporate assets claim. Defendants then moved for judgment on the pleadings with respect to the waste claim since Bally had been merged out of existence and Parnes no longer had standing to complain about an alleged injury to Bally. The Court of Chancery granted the motion,[2] and this appeal followed.

## II. Discussion

██ The viability of Parnes' complaint depends, in the first instance, upon whether her claim is direct or derivative. If, as the trial court found, the allegations in the complaint support only a derivative claim for waste of corporate assets, then under settled law Parnes lost standing to pursue her claim

---

1. *Parnes v. Bally Entertainment Corp.*, Del.Ch., C.A. No. 15192, 1997 WL 257435 (May 12, 1997) (Mem.Op.).

2. *Parnes v. Bally Entertainment Corp.*, Del.Ch., C.A. No. 15192, 1998 WL 51739 (Feb. 4, 1998).

when the merger was accomplished.[3] A derivative claim is one that is brought by a stockholder, on behalf of the corporation, to recover for harms done to the corporation.[4] Since a stockholder suing derivatively is bringing a corporate claim, not a personal one, the stockholder must maintain his or her status as a stockholder in order to continue the litigation.[5]

■ Stockholders may sue on their own behalf (and, in appropriate circumstances, as representatives of a class of stockholders) to seek relief for direct injuries that are independent of any injury to the corporation.[6] A stockholder who directly attacks the fairness or validity of a merger alleges an injury to the stockholders, not the corporation, and may pursue such a claim even after the merger at issue has been consummated.[7] The problem is that it is often difficult to determine whether a stockholder is challenging the merger itself, or alleged wrongs associated with the merger, such as the award of golden parachute employment contracts.

In *Kramer v. Western Pacific Industries*[8], this Court discussed the differences between a derivative claim for mismanagement related to a merger and a direct claim for unfairness in the merger terms. The *Kramer* complaint was filed shortly before the merger of Western Pacific Industries, Incorporated with Danaher Corporation. It alleged that two of Western's twelve directors breached their fiduciary duties by "diverting to themselves eleven million dollars of the Danaher sale proceeds through their receipt of stock options and golden parachutes and [by] incurring eighteen million dollars of excessive or unnecessary fees and expenses in connection with the sale of Western Pacific."[9] The complaint did not question the fairness of the price offered in the merger or the manner in which the merger agreement was negotiated. Nonetheless, Kramer argued that his claims of corporate waste, in the form of excessive payments to Western's management directors and others, were "tantamount to direct attacks upon the fairness of the merger terms."[10]

■ The *Kramer* Court held that the complaint stated only a derivative claim for mismanagement. Although the complaint did allege that wrongful transactions associated with the merger (such as the award of golden parachutes) reduced the amount paid to Western's stockholders, it did not allege that the merger price was unfair or that the merger was obtained through unfair dealing. The *Kramer* Court explained that a claim alleging corporate mismanagement, and a resulting drop in the value of the company's stock, is a classic derivative claim; the alleged wrong harms the corporation directly and all of its stockholders indirectly. The fact that such a claim is asserted in the context of a merger does not change its fundamental nature. In order to state a direct claim with respect to a merger, a stockholder must challenge the validity of the merger itself, usually by charging the directors with breaches of fiduciary duty resulting in unfair dealing and/or unfair price.[11]

Parnes' complaint, although not a model of clarity, directly challenges the fairness of the process and the price in the Bally/Hilton merger. It alleges that Arthur M. Goldberg, Bally's Chairman and Chief Executive Officer, controlled the merger negotiations. Goldberg allegedly informed all potential acquirors that his consent would be required for any business combination with Bally and that, to obtain his consent, the acquiror would be required to pay Goldberg substantial sums of money and transfer to him valuable Bally assets. Goldberg allegedly had no

---

3. *Lewis v. Anderson,* Del.Supr., 477 A.2d 1040 (1984).

4. *Kramer v. Western Pacific Industries,* Del.Supr., 546 A.2d 348 (1988).

5. *Id.*

6. *Id.*

7. *Lewis,* 477 A.2d at 1046, n. 10.

8. 546 A.2d at 351–354.

9. *Id.* at 350.

10. *Id.* at 351.

11. *Id.* at 354. *See Weinberger v. UOP, Inc.,* Del. Supr., 457 A.2d 701 (1983).

legal authority to demand those payments and asset transfers, which included:

1) a termination payment of $21 million (which exceeds the amount arguably due to Goldberg by approximately $14.4 million);

2) the transfer to Goldberg for $250,000 of a warrant worth $5 million for the purchase of 20% of Bally Total Fitness Holding Corporation's common stock and the forgiveness of $15.2 million of Bally Fitness indebtedness to Bally;

3) the merger of Bally's Casino Holdings, Inc., a shell corporation, into Bally and the conversion of the Casino Holdings preferred stock, all owned by Goldberg, into Bally and Bally Total Fitness stock worth approximately $43 million;

4) the transfer to Goldberg of 20% of Bally's interest in a Maryland race track project; and

5) the transfer to Goldberg of 40% of Bally's interest in a proposed Mexican gaming venture.

Hilton agreed to Goldberg's demands. Other interested acquirors, including ITT Corporation, "might have paid a higher price for Bally ..., but were discouraged from bidding because they were unwilling to participate in illegal transactions." Based upon these facts, the complaint alleges that (i) Goldberg breached his fiduciary duty of loyalty by preferring himself over Bally and its stockholders; and (ii) the other Bally directors breached their fiduciary duties of loyalty by acquiescing in Goldberg's self-interested negotiations and by approving a merger at an unfair price.[12]

Although we conclude that the Parnes complaint directly challenges the Bally merger, it does not necessarily follow that the complaint adequately states a claim for relief. In its first decision, the Court of Chancery dismissed the merger claim, finding that the complaint failed to allege facts that would deprive Bally's directors of the protections of the business judgment rule. We disagree.

■ The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."[13] Where, as here, there is no claim that enhanced judicial scrutiny is required because of the nature of the transaction,[14] to survive a motion to dismiss, "a plaintiff must allege well pleaded facts to overcome the presumption."[15]

The presumptive validity of a business judgment is rebutted in those rare cases where the decision under attack is "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith."[16] We are satisfied that the facts alleged in the Parnes complaint meet this test. Goldberg allegedly demanded that any potential acquiror pay Goldberg for his approval of the merger. Parnes supports that allegation by listing several substantial cash payments and asset transfers that allegedly lacked any consideration and were conditioned upon the completion of the merger. The Court of Chancery found those payments and asset transfers were potentially "so egregious that Board approval [could not] meet the test of business judgment."[17] Although the Court of Chan-

---

**12.** The complaint also alleges that a majority of Bally's eight directors lacked independence because of their relationships to Goldberg. Two directors were former Bally employees; one was a partner in a law firm that represented Goldberg and Bally; and one was a co-venturer with Goldberg. The Court of Chancery held that an allegation of prior employment, without more, is insufficient to cast doubt on a director's independence. As a result, the claim that Goldberg controlled a majority of the board failed. We do not need to reach this issue, as our holding is based upon the entire board's apparent failure to exercise its business judgment in good faith.

**13.** *Aronson v. Lewis*, Del.Supr., 473 A.2d 805, 812 (1984).

**14.** *See, e.g., Arnold v. Soc'y for Sav. Bancorp., Inc.*, Del.Supr., 650 A.2d 1270 (1994); *In re Santa Fe Pac. Corp. Shareholder Litig.*, Del.Supr., 669 A.2d 59 (1995) (identifying several types of claims that require enhanced scrutiny).

**15.** *In re Santa Fe Pac. Corp. Shareholder Litig.*, 669 A.2d at 71.

**16.** *In re J.P. Stevens & Co., Inc.*, Del.Ch., 542 A.2d 770, 780–81 (1988).

**17.** *Parnes v. Bally Entertainment Corp.*, Del.Ch., C.A. No. 15192, 1997 WL 257435 (May 12, 1997) Mem.Op. at 3.

cery made that finding in the context of what it viewed as a waste claim, it is equally appropriate in the merger claim. If, as Parnes claims, Goldberg tainted the entire process of finding an interested merger partner and negotiating the transaction by demanding a bribe, then it is inexplicable that independent directors, acting in good faith, could approve the deal.

The facts that are developed during the course of the litigation may cast a very different light on the merger and the Bally directors' decisions. At the pleading stage, however, we must accept all of Parnes' factual allegations as true and give her the benefit of all inferences that may be drawn from those facts.[18] Using this standard, we find that the complaint states a claim challenging the fairness of the Bally/Hilton merger and challenging the Bally directors' approval of the merger as having lacked a rational basis.

### III. Conclusion

For the reasons stated, the decisions of the Court of Chancery granting judgment on the pleadings to appellees and dismissing appellant's merger claim are hereby REVERSED.

18. *In re Tri–Star Pictures, Inc.*, Del.Supr., 634 A.2d 319 (1993).