**Alan FURST, M.D.; Michael S. Harrison, Esq., Individually and on behalf of all persons similarly situated, Appellants,**

v.

**Stephen FEINBERG; Daniel Crowley; Cerberus Partners, L.P.; Sachs Credit Partners, L.P.; Foothill Capital Corporation; Scott R. Danitz; Scott T. Larsen; Allen J. Marabito; Domenic**

---

A. Meffe; Vito Ponzio, Jr.; Joseph D. Smith; Richard M. Smith; Donald J. Amaral; William J. Casey; L. Peter Smith; Sandra L. Smoley; Richard A. Fink; Stephen G. Pagliuca; John Does 1–100; Cerberus Associates, L.L.C.; Cerberus Capital Management, L.L.C.; Craig Court, Inc.; Goldman Sachs Credit Partners, L.P.

No. 02–2357.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Dec. 13, 2002.

Decided Dec. 18, 2002.

Before FUENTES and STAPLETON, Circuit Judges, and O'KELLEY,* District Judge.

OPINION

STAPLETON, Circuit Judge.

I.

This is an appeal from a District Court order dismissing Plaintiffs' complaint with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Appellants are former stockholders of Coram Healthcare Corporation ("Coram"), who, in this class action, raise claims (1) for material misstatements or omissions under § 10(b) of the Securities Exchange Act of 1934 and

---

* Honorable William C. O'Kelley, United States District Judge for the Northern District of

Georgia, sitting by designation.

under Rule 10b promulgated thereunder, (2) for control person liability under § 20(a), (3) for breach of fiduciary duties owed directly to Appellants, and (4) for other common law torts. The Defendants/Appellees are Stephen Feinberg ("Feinberg"), Daniel Crowley ("Crowley"), and Cerebus Partners, L.P. ("Cerebus" and, collectively, "Appellees").

Coram is a public corporation, formerly traded on the New York Stock Exchange and currently on NASDAQ, that provides medical infusion products to patients in their homes. Such products include, for example, anti-infective, chemotherapy and hemophilia treatments. Since these are medical products, Coram is required to comply with "Stark II," a federal law that places certain restrictions on the equity structure of companies that provide medical services; the company must maintain shareholders' equity of, at least, $75 million if it is publicly traded.[1]

Coram was a company with significant debts, totaling $250 million, owed to a number of creditors (the "Noteholders"), including Appellee Cerebus. Appellees are alleged to have conspired to use the requirements of Stark II to send Coram into bankruptcy, so that it would emerge from the Bankruptcy proceedings as a private corporation owned by the Noteholders. In 1999, according to Appellants' allegations, Feinberg, who was the CEO of Cerebus, as well as a member of Coram's Board of Directors, induced the board to hire Crowley as a consultant to oversee the then CEO of Coram, Richard Smith. Apparently, Smith was unhappy with this arrangement and resigned soon thereafter.

Feinberg then arranged for the election of Crowley as CEO of Coram in November of 1999. Neither Feinberg nor Crowley informed the board that Crowley had been an employee of Cerebus, or that Crowley was under contract with Cerebus to obey Feinberg's instructions as to the direction of Coram. Crowley was to receive substantial compensation for his cooperation.

Appellants allege that Crowley became aware, soon after his installation as CEO, of Coram's need either to arrive at $75 million in equity or to go private in order to assure compliance with Stark II. Crowley found out that Coram would not qualify for the equity exception under Stark II as of the end of 2000. Therefore, measures needed to be taken to deal with the situation. Crowley, putatively at Feinberg's direction, then changed the business plan. Instead of trying to expand the business of the company, as his predecessor had done, he began to sell off some of Coram's subsidiary businesses. Appellants allege that some of these sales were at far below their market value, all with the purpose of raising cash income in the short term in order to service the debt obligations of Coram. These sales and the general alteration of the course of business of Coram were allegedly part and parcel of Defendants' master plan to send Coram into bankruptcy so that it could reemerge from Chapter 11 proceedings as a private corporation.

On August 8, 2000, Coram issued a statement to the press regarding its intention to file for Chapter 11 protection with the objective of emerging in such a state as to assure compliance with Stark II. In

---

1. Stark II literally provides that medical companies cannot treat patients who are referrals from physicians who are also stockholders of that company. There is an exception for public companies whose shareholders' equity exceeds $75 million. Practically, since a company has little ability to regulate who might buy their stock in the open market, and consequently cannot determine which of its referrals might come from physician-stockholders, medical companies must either be publicly traded and have shareholders' equity above the $75 million floor or be privately owned.

the statement, they revealed that the emergence from bankruptcy would terminate the current shareholders' interest in Coram and that no recovery would be available for those shareholders. On September 13, 2000, another statement was issued. This statement included the quotation from Crowley that "[i]ndependent financial advisors advised us that there were no viable options for new financing and that the value of the Company is less than the value of the debt...." Appellants allege that they sold their stock as a result of these statements.

## II.

Rule 10b–5, promulgated pursuant to 15 U.S.C. § 78j, commonly known as § 10(b) of the Securities Exchange Act of 1934, makes it unlawful for any person "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading ... in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5(b). "To state a valid claim under Rule 10b–5, a plaintiff must show that the defendant (1) made a misstatement or an omission of a material fact (2) with scienter (3) in connection with the purchase or the sale of a security (4) upon which plaintiff reasonably relied and (5) that the plaintiff's reliance was the proximate cause of his or her injury." *Semerenko v. Cendant Corp.*, 223 F.3d 165, 174 (3d Cir.2000); *See Weiner v. Quaker Oats Co.*, 129 F.3d 310, 315 (3d Cir.1997).

Appellants allege that Crowley had a contract with Cerebus and Feinberg in violation of his fiduciary duties to Coram. The failure to reveal that contract and the breach of fiduciary duty is, appellants argue, actionable under Rule 10b–5. Generally, an omission does not, however, by itself, violate Rule 10b–5. There must be an affirmative misstatement that is rendered misleading by the alleged omission. Allowing the Appellants to recover based merely on the failure to disclose the underlying breach of fiduciary duties would allow recovery for claims related to virtually any mismanagement of the company, which are properly left to state law control. As we held in *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 638–39 (3d Cir. 1989), "we must be alert to ensure that the purpose of *Santa Fe*[2] is not undermined by artful legal draftsmanship; claims essentially grounded on corporate mismanagement are not cognizable under federal law." *Id.* (quotations omitted). Thus, the issue becomes whether there was anything in the statements of August 8 and September 13 that was rendered misleading by the alleged omissions. We agree with the District Court that there was not.

■ In their brief before us, the Appellants claim that the two press releases, because of the alleged omissions, conveyed a number of misimpressions. Specifically, they argue that the press releases "created the impression that Coram (1) has an urgent need to bring itself into compliance with the equity requirements of 'Stark II' by December 31, 2000; (2) could *only* do so by restructuring itself as a private corporation; and (3) would therefore be a private corporation by December 31, 2000." Ap. Brief at 39 (emphasis in original). Appellants' argument fails because

---

2. In *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 479, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the Court held that Congress did not intend § 10(b) to regulate "transactions which constitute no more than internal corporate mismanagement." More directly, a breach of fiduciary duty without a material misrepresentation, omission, or deception, violates neither the statute or the rule. *Id.* at 476.

these alleged misimpressions have not been shown to be false or misleading.

Appellants cannot challenge the truth of (1) above, with or without the alleged omissions; the parties disagree about the possible solutions to the Stark II problem and the reasons for it, but not its existence. The truth of (3) above is likewise undisputed if one accepts the truth of the second statement. Thus, our inquiry must focus on whether the statement/impression that Coram could *only* remain in compliance with Stark II if it restructured itself as a private corporation is misleading in light of the alleged omissions.

The impression at issue, that Coram had no options available to it, other than bankruptcy, for Stark II compliance, is not misleading. The only alternative option identified by Appellants is a debt-equity exchange like the one that eventually occurred after the bankruptcy plan was rejected by the bankruptcy court. However, debt-equity exchanges could take place only at the option of the Noteholders.

The only way in which Appellants might argue that this impression is misleading, and they do, is that the knowledge of the breach of fiduciary duty would have led them to doubt the statements and to question whether the actions described were in the best interests of the company. However, this is the allegation and claim of every victim of a fiduciary breach; allowing such a claim under 10b–5 would be tantamount to allowing "artful legal draftsmanship" to undermine the purposes of *Santa Fe. Craftmatic*, 890 F.2d at 638–39. "When the incremental value of disclosure is solely to place potential investors on notice that management is culpable of a breach of faith or incompetence, the failure to disclose does not violate the securities laws." *Werner v. Werner*, 267 F.3d 288, 299 (3rd Cir.2001) (quoting *Craftmatic*, 890 F.2d at 640).

### III.

The purpose of the § 20(a) claim is to impose liability on Feinberg and Cerebus, who are not alleged to have been directly responsible for the putative misstatements or omissions. The existence of a Rule 10b–5 claim, however, is an essential element of the § 20(a) claim. Since we find that Appellants have not alleged a viable claim under Rule 10b–5, they have, likewise, failed to allege a claim under § 20(a).

### IV.

Appellants attempt to assert a claim for breach of fiduciary duty in a direct, rather than a derivative, suit. They make this attempt in order to gain standing to sue; as former shareholders, they cannot maintain a derivative suit. They face an uphill battle against a mountain of case law. Since Coram is a Delaware corporation, Delaware law applies to matters of corporate governance. *See Boyer v. Travelers' Protective Ass'n*, 75 F.2d 440, 441 (3d Cir. 1934).

"To determine whether a complaint states a derivative or an individual cause of action, we must look to the nature of the wrongs alleged in the body of the complaint, not to the plaintiff's designation or stated intention." *Lipton v. News Int'l, PLC*, 514 A.2d 1075, 1078 (Del.1986) (citing *Elster v. American Airlines, Inc.*, 100 A.2d 219, 223 (Del.Ch.1953), and *Moran v. Household Int'l, Inc.*, 490 A.2d 1059, 1069–70 (Del.Ch.1985)). "Delaware courts have long recognized that actions charging 'mismanagement which depress the value of the stock allege a wrong to the corporation; i.e., the shareholders collectively, to be enforced by a derivative action.'" *Lewis v. Spencer*, 577 A.2d 753, 1990 Del.Lexis 154, *5 (Del.1990) (quoting *Kramer v. Western Pacific Industries, Inc.*, 546 A.2d

348, 353 (Del.1988)). "A claim of mismanagement resulting in corporate waste, if proven, represents a direct wrong to the corporation that is indirectly experienced by all shareholders. Any devaluation of stock is shared collectively by all the shareholders, rather than independently by the plaintiff or any other individual shareholder." *Kramer*, 546 A.2d at 353. "[A] plaintiff alleges a special injury and may maintain an individual action [only] if he complains of an injury distinct from that suffered by other shareholders or a wrong involving one of his contractual rights as a shareholder." *Lipton*, 514 A.2d at 1078.

Appellants argue, first, that *Parnes v. Bally Entertainment Corp.*, 722 A.2d 1243 (Del.1999), has substantially overruled *Kramer* and applies to the facts in this case. In *Parnes*, a shareholder brought a suit, dismissed by the Chancery Court as derivative, but upheld by the Supreme Court as direct. However, as the District Court found, the holding of *Parnes* seems limited to merger situations. The *Parnes* Court said, "[i]n order to state a direct claim with respect to a merger, a stockholder must challenge the validity of the merger itself, usually by charging the directors with breaches of fiduciary duty resulting in unfair dealing and/or unfair price." *Id.* at 1245.

Furthermore, it is clear that *Parnes* did not overrule *Kramer*. The court, in *Parnes*, acknowledged the rule set forth in *Kramer*; it simply distinguished it. *Id.* The court stated that they were allowing a claim based on the validity of the merger, not on the price received. Furthermore, subsequent to *Parnes*, Delaware courts have alluded to the standard set out by *both* cases. *See Bradley v. First Interstate Bancorp*, 748 A.2d 913, 913 (Del.2000) ("[T]he Court concludes that, in ruling that Plaintiff Below–Appellant had pleaded derivative claims, the Court of Chancery correctly applied the standards announced by this Court in *Kramer* ... and *Parnes*...."). The case before us does not involve a merger situation and, therefore, is distinguishable from the exception to *Kramer* set forth in *Parnes*. As a result, Appellants are required to allege a injury special to them in their individual capacities.

■ Appellants cite other cases in support of their position that these circumstances allow the maintenance of a direct suit. The thread common to these cases is the merger or other forcible alteration in the status of the shareholder. There is no such occurrence here; Appellants *chose* to sell their shares. This distinction is fundamental. Since they chose to sell their shares, Appellants' allegations of injury center, as they must, around the price at which they sold those shares. Since "[a]ny devaluation of stock is shared collectively by all the shareholders, rather than independently by the plaintiff or any other individual shareholder," *Kramer*, 546 A.2d at 353, this injury will not suffice to maintain a direct suit.

Almost as an afterthought, Appellants argue that there was individual, and, therefore, special, harm to those shareholders who sold their shares, because only those who sold lost the right to sue. However, shareholders who sell their shares always forfeit the right to sue in derivative claims. If we were to allow a direct claim because shareholders sold their shares and, thus, lost their right to sue, the albeit thin line between direct and derivative claims would disappear entirely; any time that a shareholder sold stock and, thereafter, became aware of a breach of a fiduciary duty, she could claim a direct injury and maintain a claim for breach of fiduciary duty. Because so holding would

obviate the distinction between direct and derivative suits, we cannot so hold.

Appellants have alleged no special injury and their suit is, therefore, derivative in nature. Since they are no longer shareholders, they lack standing to assert such a claim.

### V.

Appellants argue that the District Court improperly dismissed their common law claims for fraud and deceit. However, they do not discuss the elements of those claims, nor do they present any argument or citations supporting their claims. Appellants' "brief is devoid of argument with respect to" the Common Law claims and, therefore, those claims should be deemed waived. *Surace v. Caterpillar, Inc.,* 111 F.3d 1039, 1047 n. 8 (3d Cir.1997).

### VI.

We affirm the district court's order dismissing the complaint for failure to state a claim under Rule 12(b)(6).