847 So.2d 253 (2003)
Ray CROCHET, et al.
v.
CISCO SYSTEMS, INC., and Cisco Systems Capital Corporation.
No. 02-1357.
Court of Appeal of Louisiana, Third Circuit.
May 28, 2003.
*254 Charlie R. Moor, Steve C. Thompson, J.E. Cullens, Jr., S. Layne Lee, Moore, Walters, Thompson, Hoover, Thomas, Papillion & Cullens, Baton Rouge, LA, for Plaintiffs/Appellants, Ray Crochet, et al.
R. Patrick Vance, Edward H. Bergin, Judith V. Windhorst, Genevieve Hartel, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, LA, for Defendants/Appellees, Cisco Systems, Inc., and Cisco Systems Capital Corporation.
Court composed of NED E. DOUCET, C.J., SYLVIA R. COOKS and JOHN D. SAUNDERS, Judges.
COOKS, Judge.
The plaintiffs, residents of Calcasieu Parish who were shareholders of American Metrocomm Corporation, appeal the judgment of the trial court sustaining the defendants' exceptions of no right of action and no cause of action. For the following reasons, we affirm the trial court's judgment.

FACTS
In April 1998, several Louisiana companies were merged into a Delaware corporation which was renamed American Metrocomm Corporation (hereafter AMC). AMC provided local telephone service and internet connection services. The plaintiffs in this matter were stockholders in AMC.
AMC declared bankruptcy in August 2000, and was unable to reorganize. The plaintiffs filed suit against Cisco Systems and Cisco Systems Capital Corporation (hereafter Cisco defendants), contending the Cisco defendants were largely responsible for "caus[ing] the failure of an impending merger transaction" between AMC and ILD Telecommunications, Inc., "which would have generated direct personal profits for Plaintiffs." Specifically, plaintiffs alleged the profits from the non-consummated merger would have inured directly to AMC's shareholders, not the corporation. They allege further that the merger was only days away from completion when the Cisco defendants intervened and caused its failure with an "egregious series of tortious acts and omissions," including providing defective and/or inappropriate hardware, providing cash-starved companies (such as AMC) with large working capital loans and equipment loans and then pressuring these companies to buy "unneeded, unworking, and sometimes even incomplete products, all of which would be paid for by Cisco Capital and then billed to the customer, with interest."
Prior to the suit filed by plaintiffs, the Cisco defendants filed suit against AMC on April 26, 2000 stemming from AMC's refusal to pay Cisco Capital's loan bill. The plaintiffs contended this suit was filed as a "preemptive strike" because the Cisco defendants "knew that the lid was about to come off regarding their business practices." Days after Cisco's lawsuit was filed against AMC, the ILD-AMC merger collapsed.
On April 27, 2001, seventy-one AMC shareholders brought the suit below, in their individual capacities, against the Cisco *255 defendants for causing the failure of the AMC-ILD merger. Suit was filed in the Fourteenth Judicial District Court in Calcasieu Parish. Twelve of the seventy-one plaintiffs are domiciled in Calcasieu Parish. The Cisco defendants filed exceptions of improper venue and improper cumulation against the non-Calcasieu plaintiffs and exceptions of no right of action and no cause of action against all plaintiffs. The Cisco defendants also filed an exception of prescription/peremption as to the plaintiffs' claims under the Louisiana Unfair Trade Practices and Consumer Protection Act (LUTPCPA), La.R.S. 51:1401, et seq.
The trial court heard arguments on all the filed exceptions, and rendered the following judgment:
The exceptions of improper venue and improper cumulation were granted with respect to the non-Calcasieu Parish plaintiffs, and dismissed their cases with prejudice;
As to the Calcasieu plaintiffs, the exceptions of no cause of action and no right of action were granted;
As to the Calcasieu plaintiffs, the exception of prescription/peremption was granted as it related to the LUTPCPA.
The trial court specifically found the plaintiffs' alleged damage from the failed merger did not satisfy the "special injury" requirement for individual shareholder actions.
The Calcasieu plaintiffs appeal the portion of the trial court's judgment dismissing their claims pursuant to the exceptions of no cause of action and no right of action. No other aspect of the judgment was appealed.

ANALYSIS
The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether the plaintiff is afforded a remedy in law based on the facts alleged in the pleading. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 94-2015 (La.11/30/94), 646 So.2d 885; Guidroz v. State Farm Mut. Auto. Ins. Co., 97-200 (La.App. 3 Cir. 6/25/97), 698 So.2d 967, rev'd on other grounds, 97-2653 (La.1/30/98), 705 So.2d 738. In evaluating an exception of no cause of action, the court must accept well-pleaded allegations of fact as true, and the issue at the hearing on the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Pittman v. Beebe, 95-1342 (La.App. 3 Cir. 3/6/96), 670 So.2d 761, writ denied, 96-882 (La.5/10/96), 672 So.2d 931.
The exception of no right of action addresses itself to whether the particular plaintiff falls, as a matter of law, within the general class of those to whom the law grants the cause of action being asserted in the suit. Louisiana Paddlewheels, 646 So.2d 885; Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3 Cir.1967). This objection is a threshold device to terminate a suit brought by one who has no interest in judicially enforcing the right asserted. Roger Boc, L.L.C. v. Weigel, 99-570 (La.App. 3 Cir. 11/3/99), 744 So.2d 731; Meche v. Arceneaux, 460 So.2d 89 (La.App. 3 Cir.1984).
Plaintiffs contend they have both a right of action and cause of action to bring claims against the Cisco defendants for their direct losses arising out of the failed merger. They argue they have direct and independent losses arising from the defendants' acts and omissions that are not derivative of any corporate loss to AMC. Thus, plaintiffs contend they are attempting to pursue a direct rather than a derivative claim.
*256 Generally, a shareholder may only sue to recover losses to a corporation secondarily through the shareholder's derivative suit. Pittman, 670 So.2d 761; Palowsky v. Premier Bancorp, Inc., 597 So.2d 543 (La.App. 1 Cir.1992). Shareholders do not have a personal right to sue to recover for acts committed against, or causing damage to the corporation. Joe Conte Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 95-1630 (La.App. 4 Cir. 2/12/97), 689 So.2d 650, writ denied, 97-659 (La.4/25/97), 692 So.2d 1090; Bolanos v. Madary, 609 So.2d 972 (La.App. 4 Cir. 1992), writ denied, 615 So.2d 339 (La. 1993).
Plaintiffs argue the law provides a direct cause of action to them in this matter. Because AMC was a Delaware corporation based in Louisiana, they have discussed both states' law to determine whether this is a direct or derivative claim. Plaintiffs point out "numerous Delaware cases hold that if a shareholder attacks the fairness of a merger transaction or claims that fraud occurred in connection with a merger transaction, that claim is a direct claim of the shareholder, not a derivative claim on behalf of the corporation. See, e.g., Parnes v. Bally Entertainment Corporation, 722 A.2d 1243 (Del.1999); Nagy v. Bistricer, 770 A.2d 43 (Del.Ch.2000); Cede & Co. v. Technicolor, Inc., 542 A.2d 1182 (Del.1988)." However, the court in Parnes specifically stated:
"[A] claim alleging corporate mismanagement, and a resulting drop in the value of a company's stock is a classic derivative claim; the alleged wrong harms the corporation directly and all of its shareholders indirectly. The fact that such a claim is asserted in the context of a merger does not change its fundamental nature."
Id., 722 A.2d at 1245.
Similarly, in Louisiana, the jurisprudence requires an injury that is "special" or unique to the shareholder. "The American Law Institute has suggested this test for distinguishing direct from derivative claims: if a shareholder can recover in a suit only by showing that the corporation was injured, then the suit is derivative in nature, even if the corporate injury does cause indirect harm to the shareholder, while if a recovery can be granted without a proof of a corporate loss, then the suit is considered to be direct." Morris & Holmes, 8 La.Civ.Law Treatise-Business Organizations § 34.03 (1999). "The general rule is that the right to an action against officers and directors for mismanagement or fraud that causes loss to the corporation is an asset of the corporation and may be asserted secondarily by a shareholder through a shareholder's derivative suit." Landry v. Thibaut, 523 So.2d 1370, 1376 (La.App. 5 Cir.), writ denied, 526 So.2d 809 (La.1988).
Plaintiffs argued that if the merger had gone through AMC would have ceased to exist. Therefore, it is the shareholders' cause and right of action. However, this argument ignores the plain fact that the merger did not go through. AMC still exists and any claim should properly be asserted in a shareholder's derivative suit.
The trial court concluded the plaintiffs were unable to show any special or direct injury independent of the harm caused to AMC to allow for an individual shareholder action. The trial court gave the following reasons:
I was hoping to be convinced that perhaps the plaintiffs had a direct injury that coulda direct claim that they could assert; but unfortunately for the plaintiffs, I remain unconvinced that stock-for-stock merger is a magic talisman which distinguishes this factual situation from any of the others that have been discussed in the case law.
*257 The Parnes case, cited above, specifically states there is nothing exceptional about a merger that removes it from the normal rules.
We note the plaintiffs do not allege they had any direct dealings with the Cisco defendants or that there was any contractual relationship between them.[1] Further, the plaintiffs do not assert that the Cisco defendants directly misrepresented anything to them. The simple fact that plaintiffs were shareholders in AMC did not make them parties to the contractual relationship between AMC and the Cisco defendants. Sample v. Louisiana Oil Refining Corp., 162 La. 941, 111 So. 336 (1927); Robertson v. Weinmann, 00-799 (La.App. 4 Cir. 3/19/01), 782 So.2d 38.
Following a thorough review of the record and jurisprudence, we find the trial court correctly sustained the exceptions of no right of action and no cause of action against the plaintiffs' claim to recover in their individual capacity. The debts and obligations due to a corporation are not due to the individuals who hold its stock. Therefore, if a corporation has sustained a loss then only that corporation can sue to recover it.

DECREE
For the foregoing reasons, the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiffs-appellants.
AFFIRMED.
NOTES
[1] There were allegations that two of the out of state plaintiffs were directly solicited by Cisco employees. However, since the out of state plaintiffs were dismissed from the lawsuit based on the venue and cumulation exceptions, these allegations are irrelevant.