Adkins v Lipner, Gordon & Co. (2004 NY Slip Op 50878(U))

[*1]

Adkins v Lipner, Gordon & Co.

2004 NY Slip Op 50878(U)

Decided on August 6, 2004

Supreme Court, Nassau County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 6, 2004

Supreme Court, Nassau County
WILLIAM H. ADKINS, Individually and as a Shareholder of and Suing in the Right of WEST BABYLON CHEVROLET-GEO, INC. D/b/a PALANKER CHEVROLET, a Delaware Corporation, Plaintiff,
against
LIPNER, GORDON & CO., d/b/a LIPNER, SOFFERMAN & CO., KEN LIPNER, SAMUEL GORDON, FRANK OSMAN and RANDY SOFFERMAN, Individually and as Partners, WEST BABYLON CHEVROLET-GEO, INC. d/b/a PALANKER CHEVROLET, A Delaware Corporation, and T.J. RINKE, Defendants.
00761-02

COUNSEL FOR PLAINTIFF
The Cochran Firm
233 Broadway
New York, New York 10279
COUNSEL FOR DEFENDANT
Farrell Fritz, P.C.
EAB Plaza
Uniondale, New York 11556

Leonard B. Austin, J.
Defendant West Babylon Chevrolet Geo, Inc. ("West Babylon") moves for an order, pursuant to CPLR 1003, 1021 and 3025(b), permitting it to substitute itself for Plaintiff William H. Adkins ("Adkins") as the Plaintiff herein and for leave to serve an amended complaint.
BACKGROUND
Adkins commenced this action individually, as a shareholder, and derivatively in the right of West-Babylon, a Delaware Corporation, against the accounting firm, Lipner, Gordon & Co. ("Lipner"), its individual partners, West Babylon, and one of its directors, T.J. Rinke ("Rinke"). Adkins alleged four causes of action. The first is for breach of contract, the second for malpractice, the third for negligent misrepresentation and the fourth for common law fraud.
In his complaint, Adkins alleged that Lipner, while retained by West Babylon to perform a broad range of accounting services, deviated from the appropriate standard of care and thereby breached its contract with West Babylon. In doing so, Lipner failed to uncover a fraudulent scheme by one of West Babylon's corporate officers, Mary Gehrlein ("Gehrlein"), which resulted in severe economic losses and damage to the dealership's good will and reputation. It also placed West Babylon in jeopardy with local, state and federal authorities.
In October 1994, Adkins and General Motors Corporation ("GM") entered into an agreement, specially tailored by GM. Pursuant to that agreement, Adkins was to invest in and operate the GM franchised West Babylon automobile dealership under the name of Planker Chevrolet. The agreement contemplated that GM would have a majority shareholder status. Adkins initially was to have a minority shareholder status. Under the terms of the agreement, Adkins was to later obtain a majority shareholder status and acquire the sole ownership of the dealership corporate entity. This was to be effected through a periodic redemption of GM's stock from corporate profits over a staggered buy-out period.
Adkins' investment in West Babylon was $240,000 for 2,400 shares of common stock while GM's initial investment was $1,260,000 for 12,600 shares of preferred stock. As provided in West Babylon's certificate of incorporation, GM retained 75% of voting rights as long as a single share of its stock remained unredeemed and outstanding. At the time the complaint was filed, Adkins was the President of West Babylon and one of its three directors. The other two directors were Rinke and P.M. Fields ("Fields"). Both are employees of GM.
When West Babylon began its operations, the Board of Directors elected Gehrlein as a corporate officer. Gehrlein had been the Controller of a prior dealership from which West Babylon had purchased dealership assets. She was hired to continue in a similar capacity with West Babylon. In November 1999, when Adkins discovered
that Gehrlein was engaged in fraudulent accounting activities against West Babylon, he notified the other Directors and GM. Director Fields nominated himself to be in charge of investigating Gehrlein's activities. The nomination was seconded and approved by a majority of the Board, with Rinke and Fields voting in favor of the resolution.
[*2]
The forensic accounting firm of Kroll Lindquist Avey ("Kroll") was retained by GM to determine how Gehrlein's activities damaged the dealership and to issue a detailed written report of its findings. Kroll's report described an extensive fraudulent scheme whereby Gehrlein was able to manipulate West Babylon's records which caused severe economic damage to the dealership in excess of $2,000,000. In addition to losses suffered by the dealership, Adkins alleges that Gehrlein's improprieties led to an adjustment of the book value of his stock in West Babylon to zero. The initial book value of his stock was $240,000.00. Moreover, Adkins claims that his buy-out period, which was initially calculated to be seven (7) years, increased to twelve years and eight months. Adkins claims that the documentary and transactional discrepancies detailed in the Kroll report were easily discoverable by minimally competent financial auditors.
Lipner is an accounting firm which was retained by GM to perform audit and tax services for many of GM's affiliates similar in structure to West Babylon. Lipner was West Babylon's auditor. It performed such services continually during the period of Gehrlein's defalcations. Adkins alleges that Lipner was aware that its audit reports would be relied upon for: (i) assessing the dealership as a going concern affecting Adkins' employment and business opportunity decisions; (ii) assessing the continuing
 financial condition of the dealership; (iii) computing Adkins' buy-out period; (iv) computing the amount, if any, of GM's shares to be redeemed, thereby increasing Adkins' ownership interest; and (v) computing Adkins' bonus..
Pursuant to West Babylon's certificate of corporation, Lipner was granted power and authority to "resolve any disagreement over matters" related to "determining Earnings available for Dividends, Earnings Available for Redemptions, Net Worth, Retained Surplus, Unrecovered Loss and all other matters of an accounting nature." Lipner's decision "would be final, conclusive and binding upon [the corporation], the Stockholders and all other persons."
Although West Babylon has commenced this action against Gehrlein in the Supreme Court, Suffolk County, the Board of Directors initially determined not to bring any legal action against Lipner. On August 21, 2003, the Board voted (a) to assume and pursue this action against the Lipner firm and its principal, Defendants Ken Lipner, Leon Lipner, Samuel Gordon, Frank Osman and Randy Sofferman ("Lipner Defendants"); and (b) to remove Adkins as a party Plaintiff. At the time of the Board's decision, this action had been pending for more than a year.
Before filing this suit individually and on behalf of the corporation, Adkins did not make a demand on West Babylon's Board of Directors to pursue this matter, because he believed that the Board's lack of independence would have made such a demand futile.
Subsequent to the commencement of this action, Adkins was removed as President of the West Babylon dealership. He is separately contesting the validity of this removal in a lawsuit pending in the United States District Court for the Eastern District of New York. Despite the ongoing disputes, Adkins remains a shareholder in West Babylon. His shares of stock have not been sold or repurchased by the corporation.
West Babylon contends that Plaintiff's action is solely derivative in nature. Since the dealership has now decided to pursue legal action against Lipner, and its principals, Adkins no longer has derivative standing. West Babylon, thus, seeks to join and substitute itself as the Plaintiff herein. By doing so, West Babylon and Rinke would be eliminated as party [*3]Defendants. To accomplish this, as Plaintiff, West Babylon requests leave to serve an amended complaint.
DISCUSSION
A. Adkins' Standing to Bring Suit Against the Defendants
Although West Babylon is the only proper party to bring the first cause of action for breach of contract against the Lipner Defendants, Adkins has suffered direct injuries that would give him standing to bring claims for the second through fourth causes of action. The status of the parties in this action is governed by the Laws of the State of Delaware, inasmuch as West Babylon was incorporated under the Laws of that state. It is widely accepted by New York courts that the law of the place of incorporation governs matters involving shareholders, directors and the determination of the proper party to bring suit. See, e.g., Gracykowkski v. Ramppen, 101 A.D.2d 978 (3d Dept., 1984); and Zion v. Kurtz, 50 N.Y.2d 92, 100 (1980).
Delaware Chancery Court Rule 23.1 allows one or more shareholders to bring a derivative suit to enforce the right of a corporation that has failed to enforce a right which may properly be asserted by it. Rule 23.1 also requires that the complaint set forth the efforts made by Plaintiff to cause the directors to pursue such claims, the reasons for the Plaintiff's failure to obtain such action or Plaintiff's reason for not making such effort.
A derivative action may not be pursued if the corporation is willing and able to assert the suit on its own behalf. See, Agostino v. Hicks, 845 A.2d 1110, 1116 (Del.Ch.Ct., 2004). This is consistent with New York law. See also, General Inv. Corp. v. Addinsell, 255 AD 319, 320 (1st Dept. 1938) ("A derivative stockholder's action will not lie where the corporation, for the benefit of which the action is instituted, elects to bring the suit itself"). Further, Rule 23.1 requires that the complaint allege that the Plaintiff was a shareholder at the time of transaction from which the Plaintiff seeks redress. Delaware courts have also held that since the stockholder suing derivatively is bringing a claim for the benefit of the corporation, not a personal one, the stockholder must maintain his or her status as a stockholder in order to continue the litigation. Parnes v. Bally Entertainment Corp., 722 A.2d 1243, 1245 (Del. 1999), citing, Kramer v. Western Pacific Industries, 546 A.2d 348 (Del. 1988).
However, Delaware courts have determined that an individual cause of action may lie where the shareholder can show separate, individual damage. Moran v. Household Intl., Inc., 490 A.2d 1059, 1070 (Del.Ch. 1985), aff'd., 500 A.2d 1346 (Del. 1986). Where individual damage is alleged, Rule 23.1 does not apply. Lipton v. News Intl., Plc., 514 A.2d 1075, 1079 (Del. 1986).
Over time, Delaware courts have found that classification of a particular claim as derivative or individual can be problematic. As a result, they have attempted to articulate an effective test to make this distinction. Up until recently, Delaware courts employed the concept of "special injury" to distinguish between derivative and individual claims brought by shareholders. Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004), citing, Lipton v. News Intl, Plc., supra at 1079.
In order to bring a direct claim, a Plaintiff must have experienced some "special injury," described as "a special wrong that is separate and distinct from that suffered by other shareholders a wrong involving a contractual right of a shareholder, such as the right to vote [*4]or to assert majority control which exists independently of any right of the corporation. Id. See also, Moran v. Household Intl., Inc., supra at 1070.
Recently, in Tooley v. Donaldson, Lufkin & Jenrette, Inc., supra, the Delaware Supreme Court concluded that the "special injury" analysis was "not helpful to a proper analytical distinction between direct and derivative actions." Id. The Tooley Court decided to "disapprove the use of the concept of 'special injury' as a tool in that analysis." Id. Instead, the Delaware Supreme Court held that the analysis must be based solely on the answer to the following two questions; to wit: (i) who suffered the alleged harm — the corporation or the suing stockholder individually; and (ii) who would receive the benefit of the recovery or other remedy. Id. The Supreme Court went on to state: "The stockholder's claimed injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." Id. at 1039.

A shareholder who suffers an injury particular to him or herself should be able to maintain an individual action, even though the corporation also suffers an injury from the same wrong. Lipton v. News Intl, Plc., supra at 1079.
To explain the effect of its newly announced analysis, the Tooley Court described how prior Delaware decisions on the same issue would have been resolved under the two prong test. Especially pertinent to the instant case is Lipton v. News Intl, Plc. In Lipton, a stockholder began acquiring shares in the Defendant corporation in order to gain control of it. In response, the Defendant corporation agreed to an exchange of shares with a friendly buyer. Due to the exchange, and a supermajority voting requirement concerning certain stockholder actions, the management of the Defendant corporation acquired veto power over any change in management. Id. at 1077.
In Lipton, the Supreme Court of Delaware applied the older "special injury" test to determine whether the complaint stated a derivative or individual claim. It found a "special injury" because the board's manipulation of the corporate stock resulted in an injury to the Plaintiff that was unlike the injury suffered by other stockholders. Id. at 1079. According to the Tooley Court's interpretation, the Plaintiff in Lipton was actively seeking to gain control of the Defendant corporation. Tooley, supra at 1038. In addition, the Tooley Court noted that the same result would have been reached by employing their two prong test and "simply concluding that the manipulation directly and individually harmed the stockholders, without inuring the corporation." Id. Similarly, in this case, because Plaintiff claims to have sustained a direct and separate injury, as a result of Lipner's actions, he must be allowed to maintain the second through fourth causes of action in his own behalf.
In the first cause of action, for breach of contract, Adkins' allegations are clearly derivative in nature inasmuch as it was brought "on behalf of the corporation v. Lipner," and thus, can only be derivative (Complaint ¶ 42). On this claim, Plaintiff asserts that Lipner had a contractual duty to conduct its audits according to both generally accepted auditing standards ("GAAS") and generally accepted accounting principles ("GAAP"). It also had a duty to "obtain sufficient competent evidential matter through inspection, observation, inquiries and confirmations, to afford a reasonable basis of opinion regarding the financial statements of [West Babylon]." (Complaint ¶ 47). According to Adkins, Lipner breached this duty when it failed to notice the $2,000,000 loss suffered by the dealership as a direct result of Gehrlein's fraudulent activities which, he argues, would have been discoverable by minimally competent financial auditors.
In addition to the financial damage, Plaintiff claims the breach of contract also resulted in damage to the dealership's good will and reputation, as well as placing West Babylon in jeopardy with local, state and federal authorities. West Babylon is the party which suffered harm from the alleged breach. The corporation will certainly be the sole beneficiary of any form of recovery realized. Because Adkins did not suffer any independent injury on this specific claim which may be considered distinct from those suffered by other shareholders or the corporation as a whole, the first cause of action for breach of contract cannot be pursued individually if the corporation is willing and able to assert the suit on its own behalf.
The other three causes of action, malpractice (second cause of action), negligent misrepresentation (third cause of action) and common law fraud (fourth cause of action), are brought "on behalf of the corporation and individually vs. Lipner." (Complaint ¶¶ 49, 57, 67).
On the malpractice claim, Adkins alleges that Lipner held itself out as a skilled, competent, and certified public accounting firm. When it accepted employment from the West Babylon, Lipner had a duty to exercise its accounting responsibilities in a proper, skillful, and diligent manner, in accordance with accepted professional standards. According to Adkins, but for the negligence of Lipner, neither West Babylon nor Adkins would have suffered any damages.
On the negligent misrepresentation claim, Plaintiff argues that Lipner fraudulently represented that the audited financial statements it issued were presented in accordance with GAAS and GAAP and failed to use due professional care. Finally, on the fraud claim, Plaintiff argues that Lipner's misrepresentations were grossly negligent and/or reckless and were material to the financial statements. According to the complaint, West Babylon and Adkins justifiably relied upon the misrepresentations and, as a result, suffered substantial damage. Most notably, the complaint alleges that Adkins sought to eventually gain complete control over the West Babylon car dealership by buying out GM's shares in the corporation and that, by reason of Lipner's alleged actions, he suffered the loss of value in his initial stock investment and a lengthening of his buy-out period.
According to Plaintiff, at the time of their initial agreement, GM determined and represented that West Babylon would make enough profit in the first seven years of operations to enable the dealership to redeem and buy-out all of GM's stock. (Complaint ¶ 10). Plaintiff also alleges that Lipner was aware that its audit reports would be relied upon for, among other things, computing Adkins' buy out period, computing the amount, if any, of GM's shares to be redeemed (thereby increasing Adkins' ownership interest) and computing Adkins' bonus amount. (Complaint ¶ 39). The complaint alleges that, in addition to the loss of stock value suffered, his buy-out period was extended from seven years to a much longer amount of time.
Based on the Lipton test, this Court concludes that on the second, third and fourth causes of action, Plaintiff's complaint sufficiently alleges individual harm of a diminution in value of his West Babylon stock and an extended buy-out period. Adkins' injury is independent of the alleged injuries to the corporation, such as the $2,000,000 lost by the Lipner's lack of adequate financial oversight. Lipner was allegedly aware that it had a duty to Plaintiff, and without showing any other proof of injury to the corporation, Plaintiff could conceivably recover for on this breach. Finally, if Plaintiff were to later recover for this loss, the benefit would certainly go to the Plaintiff and not to the dealership or any of its other shareholders. Thus, the injury suffered by Plaintiff concerning his lost stock value and his buy-out period should be construed as individual [*5]and not derivative in nature. Thus, Adkins has standing to continue as a party Plaintiff to pursue redress of his specific injuries under the second third and fourth causes of action.[FN1]
B. West Babylon's Motion to Join and Substitute
Because Plaintiff has standing to pursue claims relevant to the direct injuries he allegedly suffered individually, he should remain in the case as a party Plaintiff. West Babylon's motion to substitute in place of Adkins must be denied. However, since Adkins lacks standing to pursue the derivative first cause of action, West Babylon must be permitted to join as a Plaintiff in the action as to that and whatever corporate claims it may desire to pursue. Thus, West Babylon and Director T.J. Rinke must be removed as as party Defendants here.
CPLR 1021 allows the successors or representatives of a party to make a motion to the court for substitution. Additionally, CPLR 1002(a) allows the court to join "persons who assert any right of relief jointly, severally, or in the alternative arising out of the same transaction, occurrence or series of transactions or occurrences . . . if any common question of law or fact would arise." Indeed, parties may also be added or dropped by the court, on motion of any party or on the court's own initiative, at any stage of the action and upon such terms as may be just. CPLR 1003.
This Court believes that the joinder of the West Babylon and Adkins claims would be appropriate in this case. Although the breach of contract claim would be rightfully brought by West Babylon, the other three causes of action may be brought by either the dealership or Adkins. Because all four causes of action clearly arise out of the same occurrence and common questions of law or fact permeate all claims, joinder of the parties would be consistent with CPLR 1002(a).
This action is taken primarily at the Court's initiative because of its concerns that removing Adkins from the case would potentially result in an unfair and inconsistent result. While both West Babylon and Adkins may have standing to bring claims to recover for the losses resulting from Lipner's actions, there is no assurance that West Babylon would fully prosecute the matter or adequately protect Adkins' interests. West Babylon's initial refusal to bring claims against Lipner, based on the accounting firm's alleged ties to GM, suggests reluctance on the part of West Babylon to hold Lipner responsible for the dealership's and Adkins losses. Additionally, since West Babylon's decision to take legal action, and its subsequent request for substitution, come a year and a half after the initiation of this case, the Court believes that Adkins' request to remain as a party is entirely appropriate. Accordingly, it is,
ORDERED, that the motion of Defendant West Babylon Chevrolet Geo, Inc., for an order pursuant to CPLR 1021, substituting West Babylon as party Plaintiff in place of William H. Adkins, and thereby eliminating West Babylon as party Defendants, is granted to the extent that West Babylon may intervene as a party Plaintiff to prosecute the first cause of action and any other claims it has along with Plaintiff William H. Adkins; and it is further,
ORDERED, that the motion of Defendant West Babylon for leave to serve an amended complaint pursuant to CPLR 3025 (b) is granted. Such amended complaint shall be served not [*6]later than September 3, 2004. Adkins shall, consistent herewith serve his amended complaint not later than September 3, 2004. Defendant's answer to the amended complaint shall be served no later than October 2, 2004; and it is further,
ORDERED, that the caption in this action is hereby amended to be: SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
________________________________________________x
WILLIAM H. ADKINS and WEST BABYLON CHEVROLET-
GEO, INC. d/b/a PALANKER CHEVROLET,
a Delaware Corporation,
Plaintiff
- against -
LIPNER, GORDON & CO., d/b/a LIPNER SOFFERMAN
& CO., KEN LIPNER, SAMUEL GORDON, FRANK OSMAN
and RANDY SOFFERMAN, Individually and as Partners,
Defendants.
________________________________________________x
and the Nassau County Clerk is hereby directed to amend its files accordingly; and it is
further,
ORDERED, that counsel for all parties shall appear for a preliminary conference
on October 15, 2004 at 9:30 a.m.
This constitutes the decision and order of this Court.
Dated: Mineola, NY _____________________________
 August 6, 2004 Hon. LEONARD B. AUSTIN, J.S.C.
Footnotes

Footnote 1: In his Memorandum of Law submitted in opposition to West Babylon's motion, Adkins raises, for the first time, a tax lien in the sum of $1,000,000.00 issued against him by the New York State Department of Taxation and Finance. This claim is neither pleaded nor addressed in any other papers submitted by Adkins. This claim is not properly before the Court and has not been considered in its analysis of personal loss suffered by Adkins. If he is so inclined, his complaint may be amended to include this claim. Nevertheless, the other claims alleged in the complaint suffice to permit the court to reach its conclusion that Adkins has standing here.