IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ALAN KAHN, | § | |
| | § | |
| Plaintiff Below, | § | No. 393, 2017 |
| Appellant, | § | |
| | § | Court Below: Court of Chancery |
| v. | § | of the State of Delaware |
| | § | |
| MICHAEL D. STERN, EDWARD A. | § | C.A. No. 12498-VCG |
| STERN, JOSEPH P. DALY, JOHN W. | § | |
| POLING, and JEFFREY P. BACHER, | § | |
| | § | |
| Defendants Below, | § | |
| Appellees. | § | |
| | § | |

Submitted: March 7, 2018
Decided: March 15, 2018

Before **STRINE**, Chief Justice; **VALIHURA**, **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices, constituting the Court *en Banc*.

## **O R D E R**

We affirm this decision on the grounds that the Court of Chancery properly found that the pled facts did not support a rational inference that any of the directors faced a non-exculpated claim for breach of fiduciary duty on the theory that merger consideration was improperly diverted into payments for two management directors.[1] The pled facts do not support a rational inference to that effect, and the

---

[1] In his opening brief, the plaintiff framed his singular argument as follows: The defendants "acted in bad faith in approving a Merger that diverted consideration from stockholders to the Stern brothers." Appellant's Opening Br. 18.

transaction at issue resulted from a thorough market check and was to a buyer without any prior ties to management.[2]  To the extent, however, that the Court of Chancery's decision suggests that it is an invariable requirement that a plaintiff plead facts suggesting that a majority of the board committed a non-exculpated breach of its fiduciary duties in cases where *Revlon* duties are applicable,[3] but the transaction has closed and the plaintiff seeks post-closing damages, we disagree with that statement.[4]  Likewise, to the extent that the Court of Chancery's decision might be read as suggesting that a plaintiff in this context must plead facts that rule out any

---

[2] *Kahn v. Stern*, 2017 WL 3701611, at \*4 (Del. Ch. Aug. 28, 2017).

[3] The presence of an exculpatory charter provision does not mean that *Revlon* duties no longer apply.  Rather, *Revlon* remains applicable as a context-specific articulation of the directors' duties but directors may only be held liable for a non-exculpated breach of their *Revlon* duties.  *See RBC Capital Mkts, LLC v. Jervis*, 129 A.3d 816, 874 (Del. 2015); *McMillan v. Intercargo Corp.*, 768 A.2d 492, 502 (Del. Ch. 2000); *In re Lear Corp. S'holder Litig.*, 967 A.2d at 655.

[4] For example, there are iconic cases, such as *MacMillan*, that are premised on independent board members not receiving critical information from conflicted fiduciaries.  *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1283 (Del. 1989) ("Given the materiality of these tips, and the silence of [the conflicted directors] in the face of their rigorous affirmative duty of disclosure at the September 27 board meeting, there can be no dispute but that such silence was misleading and deceptive.  In short, it was a fraud upon the board.").  And there are also cases where impartial board members did not oversee conflicted members sufficiently.  *MacMillan* itself has a famous passage pointing to this possibility.  *Id.* at 1280 ("The board was torpid, if not supine, in its efforts to establish a truly independent auction, free of [the CEO and Chairman's] interference and access to confidential data.  By placing the entire process in [his] hands . . . through his own chosen financial advisors, with little or no board oversight, the board materially contributed to the unprincipled conduct of those upon whom it looked with a blind eye.").  *See also In re Toys "R" Us, Inc. S'holder Litig.*, 877 A.2d 975, 1002 (Del. Ch. 2005) ("[T]he paradigmatic context for a good *Revlon* claim . . . is when a supine board under the sway of an overweening CEO bent on a certain direction, tilts the sales process for reasons inimical to the stockholders' desire for the best price.").

In fairness to the Vice Chancellor, the plaintiff himself embraced the majority formulation the decision used and also conceded to us that he argued the case below as if the business judgment rule applied.  We nonetheless feel obliged to affirm on narrow grounds lest the decision below, which came on an unusual set of pled facts and a specific framing of the issues by the parties that itself was unusual, be read too sweepingly.

possibility other than bad faith, rather than just pleading facts that support a rational inference of bad faith, we disagree with that statement as well.[5] With these concerns expressed, we affirm the judgment of the Court of Chancery.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is hereby AFFIRMED.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*
Chief Justice

---

[5] *Brinckerhoff v. Enbridge Energy Co., Inc.*, 159 A.3d 242, 258–60 (Del. 2017), *as revised* (Mar. 28, 2017) ("Relying on *Parnes v. Bally Entertainment Corporation*, and corporate notions of waste, we held [in *Brinkerhoff III*] that to state a claim based on bad faith, [the general partner's] decision to enter into the Joint Venture Transaction must be so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith. . . . [W]e depart from [that] decision . . . and hold that to plead a claim that [the general partner] did not act in good faith, [the plaintiff] must plead facts supporting **an inference** that [the general partner] did not reasonably believe that the . . . transaction was in the best interests of the Partnership.") (emphasis added) (internal quotations omitted) (citing *Parnes v. Bally Entm't Corp.*, 722 A.2d 1243 (Del. 1999)).

3